IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| AMANDA BROWN AND | : | |
| TIFFANY NIXON, | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| V. | : | No. 2:23-cv-02001-JP |
| | : | |
| AMERICAN AIRLINES, INC., | : | |
| Defendant. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND CASE
TO COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA
BASED ON LACK OF SUBJECT MATTER JURISDICTION**

**I.      INTRODUCTION – FACTUAL SUMMARY**

Plaintiffs, Amanda Brown and Tiffany Nixon, filed the instant lawsuit against the Defendant, American Airlines, Inc., following a lengthy set of recoverable actions committed by Defendant. On the evening of March 30, 2021, Plaintiffs boarded American Airlines flight 5089 for which they had previously purchased tickets, which was scheduled to travel from New Orleans, LA to Philadelphia, PA via a stopover in Charlotte, NC. Plaintiffs had traveled with two other friends for a brief vacation in New Orleans. The third friend traveled with Plaintiffs aboard flight 5089 while the fourth friend returned to Philadelphia separately. The third friend did not sit with Plaintiffs on the flight, but she did observe Plaintiffs and the events that unfolded.

In anticipation of the flight to Charlotte, NC, Plaintiffs sat in their seats and fastened their seatbelts. Plaintiffs followed all instructions fully, courteously, and without question or hesitation. Nevertheless, Plaintiffs were ordered to disembark from the aircraft prior to the

aircraft leaving the gate. No explanation was given for Plaintiffs' removal other than "an incident" had occurred.

As there were no more flights to Philadelphia for the remainder of that day, Plaintiffs were booked on a flight the following morning. Plaintiffs had to remain overnight at the nearest motel available, which was extremely filthy and dilapidated leaving the Plaintiffs shocked, fearful, and traumatized. Plaintiff Brown has attended therapy following the motel stay due to poor sleep, nightmares, and other symptoms consistent with Post Traumatic Stress Disorder (i.e., PTSD).

To date, the only explanation provided to Plaintiffs regarding the reason for their removal is patently false as established by cell phone video and witness reports. The complete lack of any plausible explanation for American Airlines' employees' behavior, leaves the INTELLIGENT individual with the conclusion that American Airlines' employees engaged in racial profiling and racial animus in violation of state anti-discrimination laws. Defendant has, to date, provided no alternative explanation for the Plaintiffs' removal from the aircraft and poor treatment once removed.

## II. PROCEDURAL HISTORY

    a. Plaintiffs filed a Writ of Summons with Court of Common Pleas of Philadelphia County on March 30, 2023.

    b. The Writ of Summons was served on Defendant at its Dallas, Texas, headquarters with receipt on April 11, 2023.

    c. Defendant filed and served a Praecipe for Rule to File Complaint on May 12, 2023.

d. Plaintiffs filed and served their Complaint with the Notice to Defend on May 16, 2023.

e. Defendant filed a Notice of Removal on May 25, 2023, based on "28 U.S.C. §§ 1332(a), 1441, 1446(d)" (*See* Defendant's *Praecipe to File Notice of Removal*).

   i. 28 U.S.C. § 1332(a) - The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

   (1) citizens of different States;

   (2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;

   (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

   (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

   ii. 28 U.S.C. § 1441(a) - Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

      iii. 28 U.S.C. § 1446(d) - Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded.

   f. On May 31, 2023, the Court of Common Pleas of Philadelphia County mailed the record to this Honorable Court.

   g. Plaintiffs are filing the instant Motion to Remand with this Honorable Court on June 30, 2023.

## III. TIMELINESS OF MOTION

Pursuant to 28 U.S.C. § 1447(c), "A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). *If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.*" (emphasis added). As this Honorable Court lacks subject matter jurisdiction as shall be argued *infra*, the instant motion is timely.

## IV. LEGAL ARGUMENT

### a. Defendant's Removal Filings are Improper

Defendant's Removal application is replete with procedural faults and factual inaccuracies. For example, the Nature of the Suit is not "310 Airplane – Personal Injury." As stated in the "Civil Nature of Suit Code Descriptions (Rev. 12/22)," code 310 is an "Action alleging personal injury or wrongful death from an air crash or other occurrence involving an airplane." Nowhere in the Plaintiffs' Complaint is there any suggestion of "personal injury or

wrongful death" nor of "an air crash." The appropriate nature of the instant suit as demonstrated by Count I of the Complaint is 190 – Other Contract, which is described as an "[a]ction primarily based on rights and obligations under a contract not classifiable elsewhere under the specific natures of suit under 'Contract.'"

Under Section VII. "Requested in Complaint," the Defendant lists a demand amount of $300,000. However, on the page titled *Instructions for Attorneys Completing Civil Cover Sheet Form JSs 44*, the directions for Section VII explicitly state, "In this space enter the **actual dollar amount being demanded** or indicate other demand, such as a preliminary injunction." (emphasis added). A review of the Complaint shows that pursuant to 231 Pa. C.S. § 1021(b), no actual dollar amount is requested nor required. All that is specified is that the dollar amount being sought is "above $50,000" pursuant to 231 Pa. C.S. § 1021(c).

The Defendant improperly took a figure used in a letter for settlement, compromise, and negotiation purposes and ignored the Complaint. The letter's top figure suggesting $150,000 per plaintiff: 1) cannot be aggregated as suggested in the Defendant's Case Management Track Designation Form (which ignores mandatory arbitration under Local Civil Rule 53.2, which dictates compulsory arbitration "wherein only money damages are being sought, and such damages do not exceed $150,000.00, exclusive of interest and costs.") So, were the Plaintiffs to file a complaint for $150,000.00, compulsory arbitration would result. Defendant's suggestion that the "Standard Management" track would be required is misguided. "Plaintiffs argue that the individual amounts claimed can be aggregated for purposes of passing the [federal] arbitration threshold. The Court rejects this reading of the Local Rule." *Werwinski v. Ford Motor Co.*, CIVIL ACTION NO. 00-943, 2000 U.S. Dist. LEXIS 4602, at *9 (D. Pa. Apr. 11, 2000). The

Defendant's attempts to claim $300,000 being demanded is incorrect for determining diversity and compulsory arbitration under Local Rule 53.2.

Additionally, the Defendant, on the Designation Form improperly completed the bottom section titled "Arbitration Certification." The Defendant checked off a box reading "Pursuant to Local Civil Rule 53.2 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of 150,000.00 exclusive of interest and costs." However, Rule 53.2(3)(c)(2) reads, "Counsel for a defendant, **at the time of filing a counterclaim or cross-claim**, filed a certification with the court that **the damages sought by the counterclaim or cross-claim** exceed $150,000.00, exclusive of interest and costs." (emphasis added). The Defendant has not filed a counterclaim or cross-claim and therefore is not permitted to complete the section on Arbitration Certification.

The applicable portion of this rule is 53.2(3)(c)(1), which reads "Counsel for plaintiff, at the time of filing the complaint, or in the event of the removal of a case from state court... within fourteen (14) days of the docketing of the case in this district filed a certification that the damages sought exceed $150,000.00, exclusive of interest and costs." So, the Defendant's arbitration certification is invalid, and the Plaintiffs chose not to complete this section because **it is not applicable.** The fact is that the Defendant violated Rule 53.2 in its attempt to secure removal of the case to federal district court.

  **b. <u>Defendant has Tried to Mislead this Court on the Amount in Controversy</u>**

The Defendant has attempted to mislead this Honorable Court about the amount in controversy. First, the Defendant insisted on a demand letter from the Plaintiffs to facilitate a negotiated settlement. Defendant requested an initial amount in a demand letter and strongly suggested that Defendant was expecting an amount "in the lower or the upper six-figures."

(personal conversation between Plaintiffs' and Defendant's counsels). Prior to this, Plaintiffs' counsel had discussed the potential for an amount per Plaintiff just below the threshold for federal removal (i.e., $75,000.00).

At no point prior to the direct suggestion of the Defendant that an expected settlement figure would be above $100,000, had there been any discussion or consideration of an amount above the removal threshold. The Defendant's actions beg the question did the Defendant deliberately and disingenuously suggest a six-figure settlement was expected in its requested demand letter solely for the purposes of attempting to remove the case to federal court. While only the Defendant knows the true answer, at the very least, it renders the Defendant's assessment of the amount in controversy highly suspect.

    c. **The Amount in Controversy is Inarguably Below the Threshold for Diversity Jurisdiction**

The Defendant has clearly demonstrated their belief that the case is worth substantially less than the required $75,000 under 28 U.S.C. § 1332(a). The most recent offer for settlement from the Defendant is for $5,000 "as a global settlement of this matter." (*See* Exhibit A). In response, the Plaintiffs have proffered a global settlement offer of $150,000 as $75,000 per Plaintiff. (*See* Exhibit B). Consequently, the threshold requirement for diversity jurisdiction of "exceed[ing] the sum or value of $75,000" has not been met by the Plaintiffs or Defendant.

A lack of diversity jurisdiction removes subject matter jurisdiction from this Honorable Court and requires the remanding of the case to the state court. *See e.g.*, *Swiger v. Allegheny Energy, Inc.*, 540 F.3d 179, 185 (3rd Cir. 2008), "[o]nly if [Defendant] was domiciled in a particular state of the United States at the time the suit was filed, and that state was diverse from that of [Plaintiff], would subject matter jurisdiction be present..."; *Navarro Sav. Ass'n v. Lee*, 446

U.S. 458, 460 (1980), "The District Court dismissed the action for want of subject-matter jurisdiction.... [T]he court held that the parties lacked the complete diversity required...."; *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015), "A Rule 12(b)(1) [lack of subject matter jurisdiction] motion may be treated as either a facial or factual challenge to the court's subject matter jurisdiction.... In reviewing a factual attack, the court may consider evidence outside the pleadings.; *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000), "[t]he burden of establishing federal jurisdiction rests with the party asserting its existence. 'Challenges to subject matter jurisdiction under Rule 12(b)(1) [lack of subject matter jurisdiction] may be facial or factual....' [A] factual attack concerns 'the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'"

When determining whether the amount in controversy threshold is met, a variety of cases provide guidance. "The amount in controversy is generally decided from the face of the complaint itself. It is 'not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated.'" *Rosenfield v. Forest City Enters., L.P.*, 300 F. Supp. 3d 674, 677 (E.D. Pa. 2018). "An action removed to federal court may be remanded to state court 'if at any time before final judgment it appears that the district court lacks subject matter jurisdiction....'" 28 U.S.C. § 1447(c). Removal statutes are to be strictly construed, and all doubts are resolved in favor of remand." *DeCastro v. AWACS, Inc.,* 935 F.Supp. 541, 545–46 (D.N.J.1996). "The burden of establishing the amount in controversy in removal cases rests on the defendant." *Irving v. Allstate Indem. Co.*, 97 F. Supp. 2d 653, 654 (E.D. Pa. 2000) (internal citations omitted).

### d. The Defendant has Waived any Objection to Personal Jurisdiction by the Commonwealth of Pennsylvania

Pursuant to 15 Pa. C.S. § 411(a) (2014), "Registration required.--Except as provided in section 401 (relating to application of chapter) or subsection (g), a foreign filing association or foreign limited liability partnership may not do business in this Commonwealth until it registers with the department under this chapter."

Pursuant to 42 Pa. C.S. § 5301(a)(2)(i) (2019), "General rule.--The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person, or his personal representative in the case of an individual, and to enable such tribunals to render personal orders against such person or representative: Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth."

In the recent United States Supreme Court decision, *Mallory v. Norfolk Southern Railway Co.*, 600 U.S. ____ No. 21-1168, 2023 WL 4187749, at *3 (U.S. June 27, 2023) (plurality opinion)[1], the High Court upheld the Pennsylvania statutes, *supra*, providing that a foreign filing corporation (i.e., the Defendant in the instant case), "could be sued in [Pennsylvania] by an out-of-state plaintiff on an out-of-state contract because it had agreed to accept service of process in [Pennsylvania] on any suit as a condition of doing business there." *Id.* at *9. "The question

---

[1] Although a plurality opinion, "[w]hile various separate writings accompany this opinion, it should be apparent a majority of the Court today agrees that: Norfolk Southern consented to suit in Pennsylvania. *Pennsylvania Fire* therefore controls this case. *Pennsylvania Fire*'s rule for consent-based jurisdiction has not been overruled.... Nor will this Court now overrule *Pennsylvania Fire*. Mallory v. Norfolk Southern Railway Co., 600 U.S. ____ No. 21-1168, 2023 WL 4187749, at *23 n.11 (U.S. June 27, 2023) (plurality opinion).

before us... is a very old question—and one this Court resolved in *Pennsylvania Fire Ins. Co. of Philadelphia v. Gold Issue Mining & Milling Co.*¸ 243 U.S. 93 (1917)." *Id.* at *4.

> Much like the Missouri law at issue there, the Pennsylvania law at issue here provides that an out-of-state corporation "may not do business in this Commonwealth until it registers with" the Department of State. As part of the registration process, a corporation must identify an "office" it will "continuously maintain" in the Commonwealth. Upon completing these requirements, the corporation "shall enjoy the same rights and privileges as a domestic entity and shall be subject to the same liabilities, restrictions, duties and penalties... imposed on domestic entities." Among other things, Pennsylvania law is explicit that "qualification as a foreign corporation" shall permit state courts to "exercise general personal jurisdiction" over a registered foreign corporation, just as they can over domestic corporations.

*Id.* at *10-11.

> The parallels between *Pennsylvania Fire* and the case before us [and the instant matter] are undeniable. In both, a large company incorporated in one State was actively engaged in business in another State. In connection with that business, both companies took steps that, under the express terms or previous authoritative construction of state law, were understood as consent to the State's jurisdiction in suits on all claims, no matter where the events underlying the suit took place. In both cases, an out-of-state plaintiff sued the out-of-state company, alleging claims unrelated to the company's forum-state conduct. And in both, the out-of-state company objected, arguing that holding it to the terms of its consent would violate the Fourteenth Amendments' Due Process Clause. In *Pennsylvania Fire*, we held that there was no due process violation in these circumstances. Given the near-complete overlap of material facts, that holding, unless it has been overruled, is binding here.

*Mallory,* 600 U.S. ____, at *3-4 (Alito, J., concurring in part and concurring in the judgment). In the instant case, the Defendant has registered with the Commonwealth of Pennsylvania thereby subjecting itself to the "exercise of general personal jurisdiction" by the Courts of Common Pleas of the Commonwealth of Pennsylvania. (*See* Exhibit C). As such, the Defendant has agreed to have lawsuits heard in state court.

e. **The Defendant's Reliance on *Abdullah v. Am. Airlines, Inc.* as Establishing Federal Preemption of the Plaintiffs' State Claims is Entirely Misplaced**

In the Defendant's *Brief in Support of Its Motion to Dismiss* (hereinafter "Deft's *Brief*"), the Defendant suggests that "[a]ll of Plaintiffs' claims are preempted by federal law, resulting in dismissal of their Complaint." (Deft's *Brief* at 27). The Defendant cites *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 366 (3d Cir. 1999) in support of its argument that the Supremacy Clause of the United States Constitution permits the United States Congress to preempt state law. The Defendant goes on to say that "the field of aviation safety is squarely within the purview of the 'FAA and relevant federal regulations,' as they 'establish complete and thorough safety standards for interstate and international air transportation...'" (Deft's *Brief* at 28).

Unfortunately for the Defendant, the instant lawsuit before the Court has nothing whatsoever to do with "aviation safety." As even a quick reading of the Complaint shows, the factual recitation makes no mention whatsoever to "aviation safety." Instead, the claims of the Plaintiffs involve Breach of Contract, Breach of Implied Warranty of Fitness, False Imprisonment, Invasion of Privacy – False Light, Assault, Intentional Infliction of Emotional Distress, and Negligent Infliction of Emotional Distress. The Defendant's desperate attempt to suggest that "[a]ll of Plaintiffs' claims directly deal with, arise from, and relate to noncompliance with onboard mask and luggage mandates..." (Deft's *Brief* at 28) falls flat when the factual statements are reviews. (*See* Complaint, ¶¶ 7 – 36). Of particular note, "Upon disembarking the aircraft, both Plaintiffs repeatedly asked various American Airlines employees why they had been removed from the flight. No employee was either able or willing to provide any explanation." (Complaint, ¶20). "[Plaintiffs] sought an explanation concerning their treatment by American Airlines. After speaking with the gate attendant, the only information they could

garner was that there had been an 'incident on the plane.' After speaking with an American Airlines supervisor, Plaintiffs were provided with no explanation for their removal from the aircraft." (Complaint, ¶¶ 26 & 27). While it might be convenient for the Defendant to suddenly aver to this Court that "[a]ll of Plaintiffs' claims directly deal with, arise from, and relate to noncompliance with onboard mask and luggage mandates..." (Deft's *Brief* at 28), this statement belies the events and admissions of the Defendant over the past two years. The reasons for the Plaintiffs' horrific treatment by the Defendant remain elusive and vaporous.

A highly instructive case in this area is *Alshrafi v. Am. Airlines, Inc.*, 321 F.Supp. 2d 150 (D. Mass. 2004). In this case, the plaintiff sued American Airlines, Inc., after he was denied boarding. The plaintiff alleged that being an Arab American and Muslim were the reasons he was denied boarding based on unlawful discrimination. The defendant countered that it was based on "legitimate security purposes." *Id.* at 152. The complaint alleged unlawful discrimination in violation of Massachusetts state law and intentional infliction of emotional distress. The defendant removed the case to federal court, and the court raised the propriety of the removal to federal court *sua sponte*.

After appropriate briefing, the court made some observations applicable to the instant case and its removal to federal court. "Federal courts have interpreted this removal statute [28 U.S.C. § 1441(a)] narrowly and have placed the burden upon the removing party to demonstrate the existence of federal subject matter jurisdiction." *Alshrafi*, 321 F.Supp. 2d at 153. "It is the burden of the party invoking diversity jurisdiction, here American Airlines, to demonstrate complete diversity." *Id.* at 154.

Of particular applicability to the instant case,

> As an alternative basis for jurisdiction, the notice of removal states that 'this Court's jurisdiction is premised upon 28 U.S.C. § 1331, because [the plaintiff's]

right to relief necessarily depends upon the resolution of a substantial question of federal law, the Federal Aviation Act, 49 U.S.C. § 44902.' American Airlines further argues that its preemption defense raised under 49 U.S.C. § 41713(b) also extends federal question jurisdiction to this dispute." *Id.* "It is well established that federal jurisdiction cannot rest on defenses or counterclaims, but rather depends on the well-pleaded complaint. 'For better or worse, under the present statutory scheme as it has existed since 1887, a defendant may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law.') 'A federal question that is raised as a defense or counterclaim by a defendant... does not confer federal question jurisdiction or establish a basis for removal.' 'In deciding (for removal purposes) whether a case presents a federal 'claim or right,' a court is to ask whether the plaintiff's *claim to relief* rests upon a federal right and the court is to look only to the *plaintiff's complaint* to find the answer.' 'In the ordinary removal setting it is only a defendant that can remove, and if the plaintiff's well-pleaded complaint discloses no basis for federal jurisdiction, the defendant must litigate the claims – even the affirmative federal defenses, or counterclaims, it may assert – in state court.'

*Id.* at 154-155. (internal citations omitted). In *Alshrafi*, the court determined that it lacked subject matter jurisdiction and remanded the case to the state court. Likewise, in the instant case, the matter must be remanded to the Commonwealth of Pennsylvania for litigation and resolution within the state court.

## V. CONCLUSION

Based on the foregoing argument, supporting statutes, and case law, the Plaintiffs respectfully request that the instant matter be remanded to the Court of Common Pleas of Philadelphia County, Commonwealth of Pennsylvania, as this Honorable Court lacks federal subject matter jurisdiction.

**WHEREFORE**, Plaintiffs Amanda Brown and Tiffany Nixon respectfully pray that this Honorable Court **ORDER**:

1. Plaintiffs' Motion is **GRANTED**; and

2. The above-captioned case is **REMANDED** to the Court of Common Pleas of Philadelphia County, Pennsylvania, due to:

    a. Absence of Diversity Jurisdiction (28 U.S.C. § 1332) and

    b. Lack of federal subject matter jurisdiction (28 U.S.C. §§ 1331, 1447(c)).

Respectfully submitted,

_____  **Dated**: July 1, 2023
Aaron A. Mixon, Esquire
Pennsylvania Bar ID 94238
Mixon Law Group LLC
100 South Broad St Suite 1518
Philadelphia PA 19110-1006
Phone: (215) 972-1777
Facsimile: (215) 972-1755
Email: mcalawfirm@gmail.com
Attorney for Plaintiffs Amanda Brown & Tiffany Nixon