IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMANDA BROWN & TIFFANY NIXON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| AMERICAN AIRLINES, INC. | : | |
| | : | |
| | : | NO. 23-2001 |

**MEMORANDUM**

Padova, J.                                                                                    **March 15, 2024**

Plaintiffs Amanda Brown and Tiffany Nixon initiated this action in the Court of Common Pleas of Philadelphia County, asserting contract and tort claims under Pennsylvania law arising out of their removal from a flight operated by Defendant American Airlines, Inc.  Defendant removed the case to this Court on the basis of diversity jurisdiction.  Defendant now moves to dismiss the Complaint for failure to state a claim upon which relief can be granted, and to strike paragraphs 36 and 72 of the Complaint.  For the reasons that follow, we grant the Motion to Dismiss in part and deny it in part, and we deny Defendant's request that we strike paragraphs 36 and 72.

I.      **FACTUAL BACKGROUND**

The Complaint alleges the following facts.  On March 30, 2021, Plaintiffs boarded a flight from New Orleans to Philadelphia operated by Defendant.  (Compl. ¶ 7.)  As others were still boarding, a flight attendant told Plaintiff Brown that she needed to place her purse on the floor.  (Id. ¶ 12.)  Plaintiff Brown attempted to comply immediately but was delayed by the strap of her purse becoming tangled with her seatbelt.  (Id. ¶ 13.)  The flight attendant, mistakenly believing that Plaintiff Nixon had said something, asked her to repeat what she had said.  (Id. ¶ 14.)  Plaintiff

Nixon replied that she had not spoken, and the flight attendant left to speak with another flight attendant, who returned and told Plaintiff Nixon to "be nice." (Id. ¶¶ 15-16.)

Shortly thereafter, a large man approached Plaintiffs and insisted on escorting them from the plane. (Id. ¶ 17.) Plaintiffs, who had been cooperative, polite, and nondisruptive, were bewildered, but complied. (Id. ¶¶ 18, 21.) The entire incident was witnessed and video recorded by a friend of the Plaintiffs, who was seated elsewhere on the plane. (Id. ¶ 22.) A large group of Defendant's employees, including the two flight attendants and eight pilots, stood in the jetway and watched as Plaintiffs were removed from the plane. (Id. ¶ 23.) The crew then made several announcements to the remaining passengers stating that everything was fine and there had been no incident. (Id. ¶ 25.)

After they returned to the terminal, Plaintiffs requested the names of the flight attendants and pilot, as well as an explanation for their removal from the flight, but received no answers. (Id. ¶¶ 19-20, 26-27.) Plaintiffs were rebooked onto the first flight to Philadelphia the next morning, but that flight was less direct, and they received no assistance with securing overnight accommodations. (Id. ¶¶ 28-29.) Plaintiffs had no means of transportation, and so were forced to stay at a nearby motel, which was distressingly filthy and dilapidated. (Id. ¶¶ 30-32.) Plaintiff Brown sought therapy following this hotel stay, due to symptoms of post-traumatic stress disorder, which included poor sleep and nightmares. (Id. ¶ 33.) To date, the only explanation Defendant gave Plaintiffs for this incident is that Plaintiffs refused to wear facemasks on the plane, which the video shows was not the case. (Id. ¶¶ 34-35.) Plaintiffs are African American and all of Defendants' employees with whom they interacted are Caucasian, suggesting that racial animus was a motive for their unwarranted treatment of Plaintiffs. (Id. ¶¶ 36, 72.)

The Complaint asserts seven claims for relief under Pennsylvania law. Count I is a breach of contract claim. Count II is a claim for breach of the implied warranty of fitness for a particular purpose. Count III is a claim for false imprisonment. Count IV is a claim for false light invasion of privacy. Count V is a claim for assault. Count VI is a claim for intentional infliction of emotional distress. Count VII is a claim for negligent infliction of emotional distress. Plaintiffs seek damages in excess of $50,000 each, as well as attorney's fees and costs. Plaintiffs do not specifically demand punitive damages in the Complaint but assert in their response to the Motion to Dismiss that their allegations support such damages.[1]

In the instant Motion, Defendant asks us to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Defendant also asks, if we do not dismiss the Complaint in its entirety, that we strike paragraphs 36 and 72 of the Complaint, which contain allegations of racial discrimination, as irrelevant and scandalous pursuant to Federal Rule of Civil Procedure 12(f).

## II.    RULE 12(b)(6)

### A.  Legal Standard

When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)). "We accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." Shorter v. United States, 12 F.4th 366, 371 (3d

---

[1] The Complaint does include a request for "[s]uch other relief as this Court may deem just and proper," which may be read to encompass punitive damages. (See Compl. at 13.)

Cir. 2021) (citing <u>Warren Gen. Hosp. v. Amgen Inc.</u>, 643 F.3d 77, 84 (3d Cir. 2011)).  However, we "need not 'accept as true a legal conclusion couched as a factual allegation.'" <u>Host Int'l, Inc. v. Marketplace PHL, LLC</u>, 32 F.4th 242, 248 (3d Cir. 2022) (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)) (citation omitted).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," which "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (first quoting Fed. R. Civ. P. 8(a)(2); then quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957) (second alteration in original)).  The complaint must allege "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" <u>Warren Gen. Hosp.</u>, 643 F.3d at 84 (quoting <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 556).  In the end, we will grant a motion to dismiss pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." <u>Geness v. Admin. Off. of Pa. Cts.</u>, 974 F.3d 263, 269 (3d Cir. 2020) (quoting <u>Twombly</u>, 550 U.S. at 555).

B.  <u>Discussion</u>

1.  <u>Breach of Contract (Count I)</u>

To state a claim for breach of contract, a complaint must plausibly allege: "(1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." <u>Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.</u>, 137 A.3d 1247, 1258 (Pa. 2016) (citing <u>J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc.</u>, 792 A.2d

1269, 1272 (Pa. Super. Ct. 2002); see also Philidor RX Servs. LLC v. Polsinelli PC, No. 22-2836, 2023 WL 6290746, at *4 (3d Cir. Sep. 27, 2023) (same) (quoting Sullivan v. Chartwell Inv. Partners, LP, 873 A.2d 710, 716 (Pa. Super. Ct. 2005)).

Defendant argues that we should grant the Motion to Dismiss as to Plaintiff's breach of contract claim because the Complaint does not allege the essential terms of the putative contract or the manner in which it was breached.  The Complaint alleges that "[t]he essential terms of the contract between Plaintiffs and Defendant are found on Defendant's official website . . . [at the] Conditions of Carriage 'The contract between you, the passenger, and us, American Airlines.'" (Compl. ¶ 39; see also Pls' Resp. Ex. A.)  We may consider the Conditions of Carriage because Plaintiffs' breach of contract claim relies on this document and Defendant does not dispute its authenticity.  See Alpizar-Fallas, 908 F.3d at 914.  Defendant allegedly breached the Conditions of Carriage when its flight attendant told Plaintiff Nixon to "be nice" without cause, shortly before a "large, Caucasian male" suddenly demanded Plaintiffs follow him off the plane.  (Compl. ¶¶ 15-17.)  As a result of this breach, the Complaint alleges that Plaintiffs suffered "[s]ignificant monetary and emotional damages."  (Id. ¶ 41; see also id. ¶¶ 28-33.)[2]

While the Conditions of Carriage may well constitute the contract at issue in this case, the Complaint fails to allege the manner in which the conduct of Defendant's employees breached those Conditions or point to a specific provision which Defendant breached.  Accordingly, we conclude that the Complaint fails to allege facts which would permit us to draw a reasonable

---

[2] Plaintiffs also rely on the demand letter they sent to Defendant on February 1, 2022 as further describing the manner in which Defendant breached the contract.  (See Compl. ¶ 42; see also Pls' Resp. Ex. B.)  While the Complaint refers to this letter, it is not attached to the Complaint.  (See id.)  However, we need not determine whether we can consider the February 1, 2022 letter in the context of the instant Motion because the description in the letter of Defendant's breach of contract does not add any facts which are not already alleged in the Complaint.

inference that Defendants breached a duty imposed by the Conditions of Carriage, and therefore fails to state a claim for breach of contract upon which relief can be granted.  See Hua v. Wells Fargo Bank, N.A., Civ. A. No. 17-2365, 2017 WL 5624878, at *6 (E.D. Pa. Nov. 22, 2017) (dismissing breach of contract claim for failure to "plead the breach of a specific duty imposed by a contract" (citing Guerra v. Redevelopment Auth. of City of Phila., 27 A.3d 1284, 1289 (Pa. Super. Ct. 2011)); Philidor RX Servs. LLC v. Polsinelli PC, 552 F. Supp. 3d 506, 513-14 (E.D. Pa. 2021) ("To properly allege a breach of contract, a party needs to point at a specific provision of the document the counterparty breached." (citations omitted)), aff'd, 2023 WL 6290746.  We therefore grant the Motion to Dismiss with respect to Plaintiffs' breach of contract claim in Count I of the Complaint.

Plaintiffs ask for leave to amend any claims we dismiss.  "[I]f a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile."  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008) (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)).  Because we cannot conclude that amendment would be inequitable or futile with respect to Plaintiffs' breach of contract claim, we dismiss this Count without prejudice to permit Plaintiffs to more specifically allege how Defendant's conduct constituted a breach of the Conditions of Carriage.  See Harris v. Saint Joseph's Univ., Civ. A. No. 13-3937, 2014 WL 1910242, at *3 (E.D. Pa. May 13, 2014) (dismissing breach of contract claim without prejudice to permit plaintiff to specify which provisions of the contract at issue were breached).

### 2.   Breach of Implied Warranty of Fitness for a Particular Purpose (Count II)

To state a claim for breach of the implied warranty of fitness for a particular purpose, a complaint must plausibly allege that "the seller at the time of contracting ha[d] reason to know:

(1) any particular purpose for which the goods [were] required; and (2) that the buyer [was] relying on the skill or judgment of the seller to select or furnish suitable goods." Petka v. Samsung Elecs. Am., Inc., --- F. Supp. 3d ---, Civ. A. No. 22-2284, 2023 WL 8527563, at *5 (E.D. Pa. Dec. 8, 2023) (quoting 13 Pa. Cons. Stat. Ann. § 2315); see also Gall ex rel Gall v. Allegheny Cnty. Health Dep't, 555 A.2d 786, 790 (Pa. 1989) (quoting 13 Pa. Cons. Stat. Ann. § 2315). The warranty applies only in situations involving "transactions in *goods*" defined as "things . . . which are movable at the time of identification to the contract for sale." Whitmer v. Bell Tel. Co. of Pennsylvania, 522 A.2d 584, 587 (Pa. Super. Ct. 1987) (alteration in original) (quoting 13 Pa. Cons. Stat. Ann. §§ 2102, 2105). In other words, the "putative good . . . must be tangible and movable." Id. (citations omitted); see also Rossetti v. Busch Ent. Corp., 87 F. Supp. 2d 415, 417-18 (E.D. Pa. 2000) ("To constitute a transaction of goods, however, 'the subject matter of the transaction—the putative good—must be tangible and movable.'" (quoting Dantzler v. S.P. Parks, Inc., Civ. A. No. 87-4434, 1988 WL 131428, at *5 (E.D. Pa. Dec. 6, 1988))). If a contract involves both goods and services, we must consider the "purpose or essence of the contract" to determine whether goods or services are predominant, and thus whether provisions like the implied warranty of fitness for a particular purpose apply. See Power Restoration Int'l, Inc. v. PepsiCo, Inc., Civ. A. No. 12-1922, 2015 WL 1208128, at *10 (E.D. Pa. Mar. 17, 2015) (quoting Advent Sys. Ltd. v. Unisys Corp., 925 F.2d 670, 676 (3d Cir. 1991)).

Defendant argues that Plaintiffs' claim of breach of the implied warranty of fitness for a particular purpose must be dismissed because the instant matter does not involve a transaction in goods, but rather a transaction for a service, namely air transportation. Plaintiffs do not dispute that the implied warranty of fitness for a particular purpose applies only to tangible goods, but

assert that the Contract of Carriage itself is the good for which Plaintiffs transacted. The Complaint, however, does not support this contention.

The Complaint alleges that Plaintiffs purchased tickets from Defendant for American Airlines flight 5089 from New Orleans, LA to Philadelphia, PA. (Compl. ¶ 7.) The Compliant does not allege that the object purchased by Plaintiffs from Defendant was the Contract of Carriage, but only that the Contract of Carriage contains the essential terms of the contract between Plaintiffs and Defendant. (Id. ¶ 39.) We can only conclude that the "purpose or essence" of Plaintiffs' transaction with Defendant was to purchase tickets for air transportation, not to obtain the Contract of Carriage. Because transportation is not a tangible thing that is movable, it is not a good. Cf. Whitmer, 522 A.2d at 587 (holding that transmission of communication by telephone company constituted a service, not a good); Rossetti, 87 F. Supp. 2d at 418 ("[T]he purchase of an admission ticket to an amusement park that enables a patron to ride attractions does not constitute a 'good' pursuant to the UCC.") (citation omitted).; Huzinec v. Six Flags Great Adventure, LLC, Civ. A. No. 16-2754, 2017 WL 44850, at *5 (D.N.J. Jan. 3, 2017) (applying New Jersey's version of the UCC and Rossetti to conclude that "the admissions ticket [purchased by the plaintiff] simply memorialized, in writing, Plaintiff's right to enter the amusement park . . . and partake in other activities; those rights are what Plaintiff purchased"). We conclude, based on this authority, that neither the tickets purchased by Plaintiffs nor the Contract of Carriage constitute a "good" pursuant to Pennsylvania's UCC and, therefore, that the implied warranty of fitness for a particular purpose does not apply. Accordingly, we grant the Motion to Dismiss with respect to Plaintiffs' claim for breach of the implied warranty of fitness for a particular purpose in Count II of the Complaint. As this case does not involve a transaction in goods, we conclude that any attempt to amend this claim would be futile, and we therefore dismiss this claim with prejudice. See Phillips, 515 F.3d at 236

8

(citation omitted); Smiley v. Daimler Chrysler, 538 F. Supp. 2d 711, 715 (D. Del. 2008) ("The court has discretion to deny leave to amend when . . . amendment would be futile.") (citing Foman v. Davis, 371 U.S. 178, 182 (1962); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997)).

       3.     False Imprisonment (Count III)

To state a facially plausible claim for false imprisonment under Pennsylvania law, a Complaint must allege facts that would establish that Plaintiffs: "(1) had been detained; and (2) the detention was unlawful." Gwynn v. City of Philadelphia, 719 F.3d 295, 304 n.4 (3d Cir. 2013) (citing Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994)). "In addition to unlawful activity, Pennsylvania law requires (1) acts intending to confine another within boundaries fixed by another which (2) directly or indirectly result in such confinement (3) of which the plaintiff is conscious or by which the plaintiff is harmed." Regan v. Upper Darby Twp., 363 F. App'x 917, 922 (3d Cir. 2010) (quoting Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 540-41 (E.D. Pa. 1982)). Where confinement is not accomplished by "physical force or physical barriers," the "mere belief that one is confined" is not enough, and "plaintiff must make some attempt to determine whether s/he is actually confined." Pope v. Rostraver Shop 'N Save, 389 F. App'x 151, 153 (3d Cir. 2010) (citing Caswell v. BJ's Wholesale Co., 5 F. Supp. 2d 312, 319 (E.D. Pa. 1998).

Defendant argues that the Complaint alleges no facts that would establish that Defendant intended to or actually did confine or detain Plaintiffs in any way. While the Complaint makes the conclusory allegation that Defendant confined Plaintiffs "to a state, airport, and local city," (Compl. ¶ 52), it alleges no facts in support of this assertion. The Complaint does not allege that Defendant employed physical force, barriers, or threats, or indeed took any action to prevent Plaintiffs from leaving the airport, the city, or the state. Moreover, the Complaint does not allege

that Plaintiffs asked to leave or even that they believed they could not leave.  To the contrary, the Complaint alleges that Plaintiffs were able to freely travel to a nearby motel to stay overnight.  The allegation that Defendant prevented Plaintiffs from departing on their original flight does not establish that it detained or confined them.  Cf. Vargas v. City of Philadelphia, Civ. A. No. 11-2639, 2013 WL 6077160, at *15 (E.D. Pa. Nov. 18, 2013) (concluding that a Plaintiff who was prevented from accessing a certain area, but who was free to go anywhere else, was not subjected to false imprisonment), aff'd, 783 F.3d 962 (3d Cir. 2015).  Because the Complaint fails to plausibly allege facts that would establish that Plaintiffs were falsely imprisoned, we grant the Motion to Dismiss with respect to Count III of the Complaint.  As there is no basis to conclude that a curative amendment would be "inequitable or futile," Phillips, 515 F.3d at 236 (citation omitted), we dismiss this claim without prejudice.

### 4. False Light Invasion of Privacy (Count IV)

To state a claim for false light invasion of privacy ("false light") under Pennsylvania law, a complaint must plausibly allege that the defendant publicized information concerning the plaintiff which "is not true, is highly offensive to a reasonable person, and is publicized with knowledge or in reckless disregard of its falsity."  Graboff v. Colleran Firm, 744 F.3d 128, 136 (3d Cir. 2014) (quoting Larsen v. Phila. Newspapers, Inc., 543 A.2d 1181, 1188 (Pa. Super. Ct. 1988)) (citation omitted).  To be "publicized," the information must be communicated "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."  Doe v. Hosp. of Univ. of Pennsylvania, 546 F. Supp. 3d 336, 353 (E.D. Pa. 2021) (quoting Harris by Harris v. Easton Pub. Co., 483 A.2d 1377, 1384 (Pa. Super. Ct. 1984)).  Moreover, the communication must involve "a major misrepresentation of [plaintiff's] character, history, activities, or beliefs" which would cause a reasonable person to take "serious

offense."  Krajewski v. Gusoff, 53 A.3d 793, 807 (Pa. Super. Ct. 2012) (quoting Restatement (Second) of Torts § 652E cmt. c).

Defendant argues that we should dismiss Plaintiffs' false light claim because the Complaint does not plausibly allege that Defendant communicated any highly offensive misrepresentations concerning Plaintiffs.  The Complaint does allege that Defendant "falsely and deliberately made derogatory claims that Plaintiffs were removed from the aircraft for failure to wear face masks." (Compl. ¶ 58.)  But it does not allege facts in support of its conclusory statement that such claims were "published" to the other passengers after Plaintiffs' removal.  (Id. ¶ 60.)  Indeed, the Complaint does not allege that Defendant's employees made any communication about mask wearing or any other reason for Plaintiffs' removal to the other passengers on the plane.  Rather, the only statements Defendant's employees are alleged to have made after Plaintiffs disembarked are the announcements that "everything was 'fine' and there was 'nothing to worry about'" and that "there had been [no] 'incident' on the plane." (Id. ¶ 25.)  We cannot conclude that these generic statements constituted highly offensive misrepresentations about Plaintiffs or implied anything about Plaintiffs' mask wearing.  Moreover, the Complaint does not otherwise allege that Defendant publicized a misrepresentation about Plaintiffs by communicating it "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."  Doe, 546 F. Supp. 3d at 353.  Instead, it repeatedly alleges that Defendant offered no explanation for Plaintiffs' removal at the time of the incident, (Compl. ¶¶ 18, 20, 26-27), only later providing the improper masking explanation, and only "to Plaintiffs," (id. ¶ 34.)  Accordingly, we conclude that the Complaint fails to allege sufficient facts to state a facially plausible false light claim.  As there is no basis to conclude that a curative amendment would be

"inequitable or futile," Phillips, 515 F.3d at 236 (citation omitted), we dismiss this claim without prejudice.

     5.     Assault (Count V)

To state a claim for civil assault under Pennsylvania law, a complaint must plausibly allege that the defendant (1) committed "an act intended to put [the plaintiff] in reasonable apprehension of an immediate [harmful or offensive contact]" and (2) "succeed[ed] in causing an apprehension of such [contact]." Martin-McFarlane v. City of Philadelphia, 299 F. Supp. 3d 658, 670 (E.D. Pa. 2017) (quoting Regan, 363 F. App'x at 921); see also Cucinotti v. Ortmann, 159 A.2d 216, 217 (Pa. 1960). Assault requires affirmative action— "[w]ords in themselves, no matter how threatening, do not constitute an assault." Regan, 363 F. App'x at 921 (quoting Cucinotti, 159 A.2d at 217); see also Bohnenkamp v. Whisterbarth, Civ. A. No. 19-115, 2021 WL 1600477, at *9 (W.D. Pa. Apr. 23, 2021) (quoting Napier v. City of New Castle, Civ. A. No. 06-1368, 2007 WL 1965296, at *8 (W.D. Pa. July 3, 2007), aff'd, 407 Fed. App'x. 578 (3d Cir. 2010)) (citation omitted).

Defendant argues that Plaintiffs' assault claim must be dismissed because the Complaint does not allege that Defendant's employees threatened or touched Plaintiffs. The Complaint alleges that Plaintiffs "were deliberately placed in fear of imminent serious bodily harm by the sheer number and size of Defendant's employees present to request [that they] disembark from the aircraft." (Compl. ¶ 65.) It alleges that during the events in question Plaintiffs "followed all flight crew directives, remained quiet and respectful, wore double facial masks throughout their brief time on the aircraft, and were never disruptive or loud." (Compl. ¶ 21). Despite this, Defendant's employees allegedly addressed them "coarsely" and told them to "be nice" without cause, and immediately thereafter a "large, Caucasian male" approached them and "demanded" that they

follow him off of the plane.[3]  (Id. ¶¶ 12, 16-17.)  As they complied, they were led past "a large

group" of ten of Defendant's employees in the jet bridge, including the two flight attendants

involved in the onboard incident.  (Id. ¶ 23.)  The Complaint also alleges that all of the employees

involved were Caucasian, while Plaintiffs are African American, and suggests that the employees'

conduct was motivated by racial animus.  (Id. ¶ 36.)  Finally, the Complaint alleges that Plaintiffs

were traumatized by this incident and that Plaintiff Brown has suffered from Post Traumatic Stress

Disorder as a result of this incident and her subsequent motel stay and has required therapy.  (Id.

¶¶ 33-34.)  Construing them "in the light most favorable to [Plaintiffs]," Shorter, 12 F.4th at 371

(citation omitted), these allegations of sudden and unwarranted behavior by Defendant's

employees support Plaintiffs' claim that Defendant intended to place Plaintiffs "in reasonable

apprehension of an immediate [harmful *or offensive* contact]," Martin-McFarlane, 299 F. Supp. 3d

at 670 (quotations omitted) (emphasis added).  Similarly, we conclude that Plaintiffs have alleged

facts showing that they were in fact placed in apprehension of such contact based on the alleged

racial dynamic and resultant trauma.  We therefore conclude that the Complaint states a facially

plausible claim for assault and we deny Defendant's Motion to Dismiss with respect to Count V.

6.    Intentional Infliction of Emotional Distress (Count VI)

To state a claim for intentional infliction of emotional distress ("IIED") under Pennsylvania

law, a complaint must plausibly allege that: (1) Defendant engaged in "extreme and outrageous"

conduct, (2) the conduct was "intentional or reckless," (3) the conduct caused emotional distress,

and (4) the distress was "severe."  Jordan v. Pennsylvania State Univ., 276 A.3d 751, 775 (Pa.

---

[3] Defendant correctly notes that the Complaint never specifies who the individual who removed Plaintiffs was or that he was an employee of Defendant's.  Nevertheless, construing it in the light most favorable to Plaintiffs, we conclude that the Complaint plausibly alleges that this individual was an agent of Defendant based on the alleged circumstances and behavior of the crew and passengers.

Super. Ct. 2022) (citing Madreperla v. Williard Co., 606 F. Supp. 874, 879-80 (E.D. Pa. 1985)). "The conduct must be 'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id. (quoting Rinehimer v. Luzerne Cty. Cmty. Coll., 539 A.2d 1298, 1305 (Pa. Super. Ct. 1988); Restatement (Second) of Torts § 46 cmt. d). A complaint must also allege that the plaintiff suffered physical harm as a result of the conduct. N'Jai v. Pittsburgh Bd. of Pub. Educ., 487 F. App'x 735, 737 (3d Cir. 2012) (quoting Swisher v. Pitz, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005)) (citing Reedy v. Evanson, 615 F.3d 197, 231 (3d Cir. 2010)). Physical harm can include "physical manifestations of emotional suffering" such as "depression, nightmares, stress and anxiety" which are ongoing and require psychological treatment. Love v. Cramer, 606 A.2d 1175, 1179 (Pa. Super. Ct. 1992).

Defendant argues that Plaintiffs' IIED claim must be dismissed because the alleged conduct is not sufficiently extreme or outrageous. We agree that the allegations in the Complaint fall short of the outrageousness required to state a claim for IIED, which in Pennsylvania has been "reserved by the courts for only the most clearly desperate and ultra extreme conduct." Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998). Even though the Complaint alleges that racial animus was an element of Defendant's treatment of Plaintiffs, "'[c]ourts in this District have repeatedly found that racial discrimination alone does not meet the "extreme and outrageous conduct" standard necessary to state a claim for intentional infliction of emotional distress.'" Stokley v. Bristol Borough Sch. Dist., Civ. A. No. 13-3277, 2013 WL 4787297, at *3 (E.D. Pa. Sept. 9, 2013) (quoting Hargraves v. City of Philadelphia, Civ. A. No. 05-4759, 2007 WL 1276937, at *3 (E.D. Pa. Apr. 26, 2007)); see also Lane v. Cole, 88 F. Supp. 2d 402, 406 (E.D. Pa. 2000) ("Invidious discrimination is not alone sufficient to support an intentional infliction of emotional distress

claim." (collecting cases)); <u>Cortese v. W. Jefferson Hills Sch. Dist.</u>, No. 53 C.D. 2008, 2008 WL 9404638, at *7 (Pa. Commw. Ct. Dec. 9, 2008) ("[I]t has been held that even 'highly provocative racial slurs and other discriminatory incidents do not amount to actionable outrageous conduct." (quoting <u>EEOC v. Chestnut Hill Hospital</u>, 874 F. Supp. 92, 96 (E.D. Pa. 1995))).  This is because the *character* of the conduct, not merely the motive, must be sufficiently outrageous.  <u>See</u> <u>Stokley</u>, 2013 WL 4787297, at *3 (citing <u>Forbes v. Rhode Island Bhd. of Corr. Officers</u>, 923 F. Supp. 315, 330 (D.R.I. 1996)).  Setting aside the alleged discriminatory motive, we cannot conclude that Defendant's conduct in removing Plaintiffs from their flight and rebooking them the next day without offering them overnight accommodations is sufficiently "desperate or ultra extreme" to sustain Plaintiffs' IIED claim.  <u>Hoy</u>, 720 A.2d at 754; <u>cf.</u> <u>Jeanjacques v. AMC Ent. Holdings, Inc.</u>, Civ. A. No. 21-3670, 2021 WL 4478665, at *5-6 (E.D. Pa. Sept. 30, 2021) (dismissing IIED claim based on allegations of employee making racially charged comments and accusations while having African American customers removed from theater).  Accordingly, we grant the Motion to Dismiss with respect to Plaintiffs' IIED claim in Count VI of the Complaint.  As there is no basis to conclude that a curative amendment would be "inequitable or futile," <u>Phillips</u>, 515 F.3d at 236 (citation omitted), we dismiss this claim without prejudice.

    7. <u>Federal Preemption</u>

   Defendant also argues that we should dismiss all of Plaintiffs' claims because they are preempted by federal law.  As we denied the Motion to Dismiss with respect to Plaintiffs' assault claim, and as Defendant does not argue for dismissal of the negligent infliction of emotional distress claim except on preemption grounds, we now address preemption as to those two claims.

   "It is a familiar and well-established principle that the Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that 'interfere with, or are contrary to,' federal law."  <u>Hillsborough</u>

Cnty., Fla. v. Automated Med. Lab'ys, Inc., 471 U.S. 707, 712 (1985) (quoting Gibbons v. Ogden, 6 L. Ed. 23 (1824)).  "'[T]he purpose of Congress is the ultimate touchstone' of pre-emption analysis" and courts apply a "presumption that Congress does not intend to supplant state law." Abdullah v. Am. Airlines, Inc., 181 F.3d 363, 366-67 (3d Cir. 1999) (first quoting Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992); and then quoting New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 654 (1995)).  In Abdullah, the Court of Appeals for the Third Circuit considered whether the Federal Aviation Act, 49 U.S.C. § 40101 et seq., preempted state law in the field of aviation safety.  181 F.3d at 364.  The court first held that "the FAA and relevant federal regulations establish complete and thorough safety standards for interstate and international air transportation that are not subject to supplementation by, or variation among, jurisdictions."  Id. at 367.  Accordingly, "the standard applied in determining if there has been careless or reckless operation of an aircraft, should be federal[.]"  Id. at 372.  Nonetheless, the court concluded that "we cannot infer from Congress's intent to federally preempt the standards of care, that Congress also intended to bar state and territorial tort remedies." Id. at 376 (citation omitted).  Thus, state tort remedies "continue to exist for violation of [federal aviation safety] standards."  Id. at 375.

"Preemption is an affirmative defense on which [the defendant] bears the burden of production and persuasion."  Sikkelee v. Precision Airmotive Corp., 907 F.3d 701, 708 (3d Cir. 2018) (citing In re Vehicle Carrier Servs. Antitrust Litig., 846 F.3d 71, 84 (3d Cir. 2017); El v. Se. Pa. Transp. Auth., 479 F.3d 232, 237 & n.6 (3d Cir. 2007)).  Here, Defendant makes no argument as to the preemption of specific claims, but simply argues generally that all of Plaintiffs' claims are preempted because they "directly deal with, arise from, and relate to noncompliance with onboard mask and luggage mandates, which incontrovertibly implicate the field of aviation

safety." (Def. Mot. Br. at 28 (citation omitted).)  Defendant particularly relies on the allegations that Plaintiff Brown was instructed to place her purse onto the floor but struggled to do so, as well as the allegation that, at some point after the incident occurred, Defendant attributed it to Plaintiffs' failure to wear face masks.  (See Compl. ¶¶ 12-13, 34.)

Contrary to Defendant's assertion, the Complaint contains no allegations of noncompliance with mask or luggage mandates, nor any allegations that the crew members involved believed there had been any such noncompliance.  Rather, the Complaint affirmatively alleges that Plaintiffs "followed all flight crew directives, remained quiet and respectful, wore double facial masks throughout their brief time on the aircraft, and were never disruptive or loud." (Id. ¶ 21). Regarding luggage mandates, the Complaint alleges only that Plaintiff Brown struggled to "*immediately* comply" with the flight attendant's instruction to place her purse on the floor.  (Id. ¶ 13 (emphasis added).)  It also alleges that Plaintiffs were generally fully compliant, that the flight attendant immediately shifted her attention to Plaintiff Nixon following that single instruction, and that none of Defendant's employees made any further mention of the purse.  Particularly viewed in the light most favorable to Plaintiffs, we cannot agree that these allegations suggest noncompliance.  Similarly, the allegation that, at some point after Plaintiffs were removed from the aircraft, rebooked onto a flight leaving the next day, and spent the night in a dilapidated motel, Defendant blamed the incident on Plaintiffs' failure to wear face masks does not contravene the Complaint's express allegation that they wore face masks throughout the incident.  (See id. ¶ 21.)

Moreover, as explained above, the Third Circuit in Abdullah held "only that the standard of care used in adjudicating [common law negligence] claims was preempted." Elassaad v. Indep. Air, Inc., 613 F.3d 119, 125 (3d Cir. 2010).  Thus, Abdullah does not support Defendant's preemption argument as to Plaintiffs' intentional tort claim of assault.  See Press v. United Airlines,

Inc., Civ. A. No. 11-2265, 2012 WL 1569786, at *5 (M.D. Pa. May 3, 2012) ("The FAA does not establish uniform standards for intentional torts . . . and there is no indication that Congress intended as much.").  Furthermore, even negligence claims, such as Plaintiffs' negligent infliction of emotional distress claim, are not automatically preempted under Abdullah.  Only the standard of care is preempted—supplanted by federal safety standards—while state law "still govern[s] the other negligence elements (breach, causation, and damages), as well as the choice and availability of remedies."  Elassaad, 613 F.3d at 125; see also Abdullah, 181 F.3d at 376 ("[W]e find that state and territorial tort remedies can coexist with federal standards of care for air safety[.]").  As Defendant makes no argument that the Complaint fails to state a claim for negligent infliction of emotional distress under *any* standard of care, we cannot conclude that Plaintiffs' negligent infliction of emotional distress claim is preempted under Abdullah.  Accordingly, we hold that Defendant has not met its burden to prove that Plaintiffs' claims for assault and negligent infliction of emotional distress are preempted by the Federal Aviation Act, and we deny the Motion to Dismiss those claims on preemption grounds.

       8.   Punitive Damages

Under Pennsylvania law, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others."  Hutchison ex rel. Hutchison v. Luddy, 870 A.2d 766, 770 (Pa. 2005) (quotation and citation omitted).  Only conduct that is "intentional, willful, wanton or reckless" will justify an award of punitive damages.  Phillips v. Cricket Lighters, 883 A.2d 439, 445 (Pa. 2005) (quoting SHV Coal, Inc. v. Continental Grain Co., 587 A.2d 702, 704 (Pa. 1991)).  "[P]unitive damages are an 'extreme remedy' available in only the most exceptional matters."  Id. (quotations omitted).

While the Complaint does not assert a specific request for punitive damages, Defendant argues that we should dismiss any possible claim to punitive damages because the Complaint fails to allege that Defendant had an evil motive or committed outrageous conduct.[4]

As we have previously recounted, the Complaint alleges that although Plaintiffs were respectful and compliant, Defendant's employees addressed them "coarsely" and told them to "be nice" without cause, and that immediately thereafter a "large, Caucasian male" approached Plaintiffs and abruptly "demanded" that they follow him off of the plane. (Compl. ¶¶ 12, 16-17.) After being led past a large group of Defendant's employees standing on the jetway, Plaintiffs were rebooked on a less-direct flight the next day and offered no assistance with overnight accommodations or other compensation. The Complaint alleges that this mistreatment was motivated by racial animus. These allegations of outrageous conduct and "evil motive," if proven, could support an award of punitive damages. Hutchison, 870 A.2d at 770 (quotations and citations omitted).[5] Accordingly, we hold that the Complaint plausibly alleges conduct which could support an award of punitive damages and we deny the Motion to Dismiss to the extent Plaintiffs seek such damages.

---

[4] Notwithstanding their failure to specifically request punitive damages in the Complaint, Plaintiffs maintain in their response to the instant Motion that the Complaint's allegations that they endured unjustified and racially motivated mistreatment support an award of punitive damages.

[5] This is not inconsistent with our earlier conclusion that Plaintiffs' allegations are not sufficiently outrageous to state a claim for IIED. Under Pennsylvania law, the outrageousness standard for IIED is higher than that required for punitive damages. See Hoy, 720 A.2d at 754 (explaining that "a degree of aggravation that would entitle the plaintiff to punitive damages" can be insufficient to support a claim for IIED (quoting Restatement (Second) of Torts § 46 cmt. d; Daughen v. Fox, 539 A.2d 858, 861 (Pa. Super. Ct. 1988))).

### III.    RULE 12(f)

As we have not dismissed the Complaint in its entirety, we now address Defendant's

request that we strike paragraphs 36 and 72 of the Complaint, which contain allegations of racial

discrimination, as irrelevant and scandalous pursuant to Federal Rule of Civil Procedure 12(f).

Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or

any redundant, immaterial, impertinent, or scandalous matter."  "'The standard for striking under

Rule 12(f) is strict and . . . only allegations that are so unrelated to plaintiffs' claims as to be

unworthy of any consideration should be stricken.'"  Zucal v. Cnty. of Lehigh, Civ. A. No. 21-

4598, 2023 WL 3997963, at *13 (E.D. Pa. June 14, 2023) (alteration in original) (quoting Johnson

v. Anhorn, 334 F. Supp. 2d 802, 809 (E.D. Pa. 2004)); see also Ford-Greene v. NHS, Inc., 106 F.

Supp. 3d 590, 615 (E.D. Pa. 2015) (same) (quoting Steak Umm Co., LLC v. Steak 'Em Up, Inc.,

Civ. A. No. 09-2857, 2009 WL 3540786, at *2 (E.D. Pa. Oct. 29, 2009)).    Consequently,

"[m]otions to strike are generally disfavored by courts and will be denied unless the allegations

'have no possible relation to the controversy and may cause prejudice to one of the parties, or if

the allegations confuse the issues in the case.'"  Mitchell v. Cmty. Educ. Centers, Inc., Civ. A. No.

14-5026, 2015 WL 4770652, at *11 (E.D. Pa. Aug. 11, 2015) (quoting Natale v. Winthrop Res.

Corp., Civ. A. No. 07-4686, 2008 WL 2758238, at *14 (E.D. Pa. July 9, 2008)).

Paragraph 36 of the Complaint alleges that:

Given the lack of any plausible explanation for American Airlines' employees'
behavior, the fact that Mses. Brown and Nixon are African-American while all
other individuals who interacted with Plaintiffs during this incident were
Caucasian, the likelihood of American Airlines' employees engaging in racial
profiling and racial animus, which violates state and federal anti-discrimination
law, is extremely likely.

(Compl. ¶ 36.)  Paragraph 72 similarly alleges that: "[g]iven the lack of any reasonable explanation

for Defendant's outrageous and harmful conduct, racial animus remains a significant element in

Defendant's actions."  (Id. ¶ 72.)  Defendant argues that these allegations should be stricken because Plaintiffs have not asserted a claim for discrimination and do not allege that Defendant referenced or considered their ethnicity during the events in question.  They further argue that these allegations are highly prejudicial and would confuse jurors, given the lack of a discrimination claim.

Defendant's argument that the Complaint does not allege that its employees considered Plaintiffs' ethnicity during the events in question is simply wrong.  The Complaint makes such allegations in the very paragraphs that Defendant seeks to strike.  Moreover, these allegations of racial animus are relevant to the reasonable apprehension element of Plaintiffs' assault claim and essential to their claim for punitive damages.  These allegations are also material to our analysis of Defendant's preemption defense, which turns on whether Plaintiffs' claims are sufficiently related to aviation safety to be preempted by the FAA.  For these reasons, we cannot conclude that the challenged allegations "have no possible relation to the controversy."  Mitchell, 2015 WL 4770652, at *11 (quotation omitted).  Accordingly, we deny the instant Motion with respect to Defendant's request that we strike paragraphs 36 and 72 of the Complaint.

## IV.    CONCLUSION

For the foregoing reasons, we grant Defendant's Motion to Dismiss in part and deny it in part.  We grant the Motion with respect to Plaintiffs' claim for breach of the implied warranty of fitness for a particular purpose in Count II and we dismiss Count II with prejudice.  We also grant the Motion without prejudice with respect to Plaintiffs' claims for breach of contract (Count I), false imprisonment (Count III), false light invasion of privacy (Count IV), and intentional infliction of emotional distress (Count VI) and grant Plaintiffs leave to file an amended complaint that corrects the deficiencies noted above with respect to those Counts.  We deny the Motion to Dismiss

with respect to Plaintiffs' claims for assault (Count V) and negligent infliction of emotional distress (Count VII) and with respect to Plaintiffs' implied request for punitive damages.  We also deny Defendant's request that we strike paragraphs 36 and 72 of the Complaint.  An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.
_____
John R. Padova, J.